UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WOODS JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF TEHAMA, et al.,<br><br>Defendants. | No. 2:18-cv-02918-TLN-DMC<br><br><br><br>**ORDER** |

This matter is before the Court on Defendants County of Tehama ("County"), Tehama County Sheriff's Office ("Sheriff's Office"), Sheriff Dave Hencratt ("Hencratt"), and Assistant Sheriff Phil Johnston ("Johnston") (collectively, "County Defendants") Motion to Dismiss. (ECF No. 46.) Plaintiffs James Woods, Jr. and James Woods Sr. (collectively, "Plaintiffs") filed an opposition. (ECF No. 47.) County Defendants filed a reply. (ECF No. 50.)

Also before the Court is Defendant Rancho Tehama Association, Inc.'s ("RTA") Motion to Dismiss. (ECF No. 38.) Plaintiffs filed an opposition. (ECF No. 43.) RTA filed a reply. (ECF No. 44.)

For the reasons set forth below, the Court GRANTS County Defendants' motion (ECF No. 46) and DENIES RTA's motion (ECF No. 38) as moot.

///

///

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recount all background facts, as they are set forth fully in the Court's August 4, 2020 Order. (*See* ECF No. 35.) In short, this action arises from a mass shooting that occurred on November 14, 2017. (*Id.*) The shooter, Kevin Neal ("Neal") killed at least five people and wounded at least a dozen more. (*Id.*) Neal shot at Plaintiffs after rear-ending their vehicle. (*Id.* at 4.) James Woods, Jr. sustained a gunshot wound to his face and James Woods, Sr. sustained injury from shrapnel hitting his left cheekbone, under his right eye, and his ear. (*Id.*)

Plaintiffs filed the instant action on November 5, 2018. (ECF No. 1.) The Court granted County Defendants' motion to dismiss the Complaint on August 4, 2020 (ECF No. 35) and denied RTA's motion to dismiss as moot on September 3, 2020 (ECF No. 37). Plaintiffs filed the operative First Amended Complaint ("FAC") on September 3, 2020. (ECF No. 36.) Plaintiffs assert the following claims: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for violation of due process under the Fourteenth Amendment against County Defendants; (2) a § 1983 claim for violation of equal protection under the Fourteenth Amendment against County Defendants; (3) a § 1983 *Monell* claim for failure to train/supervise against County Defendants; (4) failure to perform mandatory duties in violation of California Government Code § 815.6 against County Defendants; (5) negligent supervision, training, retention, and ratification against County Defendants; (6) negligence per se against County Defendants; (7) negligence/negligent premises liability against RTA; (8) public and private nuisance against all Defendants; and (9) negligent infliction of emotional distress against all Defendants. (*See generally id.*)

RTA and County Defendants filed separate motions to dismiss the FAC. (ECF Nos. 38, 46). Both motions are brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

### II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the

2

1  defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*
2  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified
3  notice pleading standard relies on liberal discovery rules and summary judgment motions to
4  define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema*
5  *N.A.*, 534 U.S. 506, 512 (2002).

6       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
7  *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every
8  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail*
9  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege
10  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to
11  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

12       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of
13  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).
14  While Rule 8(a) does not require detailed factual allegations, "it demands more than an
15  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A
16  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the
17  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678
18  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
19  statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences
20  are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355,
21  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the
22  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws
23  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*
24  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

25       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
26  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim
27  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
28  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

County Defendants and RTA move to dismiss all Plaintiffs' claims against them. Because this Court's subject matter jurisdiction depends on Plaintiffs' federal claims against County Defendants (*see* ECF No. 36 at 7), the Court first addresses Plaintiffs' § 1983 claims for due process, equal protection, and *Monell* violations. As will be discussed, because Plaintiffs fail to state a viable federal claim — and it is unclear whether they can do so in an amended complaint

— the Court declines to address Plaintiffs' state law claims in the interest of judicial economy.

### A. Federal Claims

#### i. Claim One: Due Process

Plaintiffs bring their due process claim against County Defendants and Does 1–10 under the state created danger theory. (ECF No. 36 at 33.) In order to prevail under a state created danger theory, a plaintiff must show (1) there was "affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) the state acted with "deliberate indifference" to a "known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citing *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). The Court further notes that should Plaintiffs be able to establish a constitutional violation under this theory, the County and Department can only be held liable if there is a municipal policy or practice which was the driving force behind the deprivation, or, on the part of Hencratt and Johnston, if they had a personal involvement in the deprivation or if their wrongful acts were sufficiently causally related to the deprivation. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

In its previous order, the Court concluded Plaintiffs' allegations that officers (1) ignored credible complaints about Neal and (2) threatened Neal's victims for reporting crimes were not "affirmative act[s] that placed the victims in a more dangerous position." (ECF No. 35 at 9–10.) Because Plaintiffs failed to allege officers took any affirmative action, the Court declined to address deliberate indifference. (*Id.* at 11.)

In the instant motion, County Defendants again argue Plaintiffs fail to allege affirmative action. (ECF No. 46-1 at 11–14.) In opposition, Plaintiffs highlight the following new allegations in the FAC: (1) when responding to a complaint about Neal's shooting in 2016, officers told Neal he could discharge firearms as long as he did so "in a safe manner" when they knew he had not been doing so and that the discharge of firearms was prohibited in the community; (2) after a criminal protective order against Neal became effective in early 2017, officers improperly left it up to Neal to voluntarily turn in his firearms and did not follow up when Neal's wife called and reported her firearm as stolen, which communicated to Neal that

County Defendants did not care if he continued to own and discharge firearms; (3) County Defendants communicated to Neal they did not enforce protective order violations or take illegal possession of firearms seriously when they refused to respond to Neal's complaints in July 2017 about other individuals brandishing firearms and violating restraining orders; and (4) Neal knew that County Defendants failed to adequately respond to complaints about Neal possessing and shooting firearms on his property toward his neighbor's homes.  (ECF No. 47 at 17–21.)  Plaintiffs argue these allegations constitute affirmative action by County Defendants in that they "communicated explicitly (by direct contact) and implicitly (via a general and conspicuous pattern and practice of not taking complaints of Neal's violent and illegal behavior seriously) that Neal could continue to act with impunity, discharge firearms, and terrorize the community without facing law enforcement repercussions."  (*Id.* at 16.)  To support this proposition, Plaintiffs rely primarily on three Second Circuit cases: *Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005), *Dwares v. City of N.Y.*, 985 F.2d 94 (2d Cir. 1993), and *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009).  (*Id.* at 13–15.)  Even if this Court were to apply the foregoing Second Circuit authority, however, these cases are easily distinguishable.

In *Dwares*, police officers allegedly told skinheads in advance of a political rally that they would not interfere with assaults or arrest those responsible for them.  985 F.2d at 99.  The *Dwares* court stated "[s]uch a prearranged official sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause."  *Id.*  In contrast, Plaintiffs do not allege any officers *explicitly* told Neal it was acceptable to harm others or that he would not be arrested if he did so.  Plaintiffs argue officers "directly communicated" their approval by: (1) telling Neal in 2016 there "was nothing they could do" so as long as he was shooting his firearms "in a safe manner" despite knowing Neal was not shooting in a safe manner and had recently assaulted someone; (2) allowing Neal to voluntarily turn in firearms after the criminal protective order was issued and failing to follow up with a subsequent report from Neal's wife that her firearm was missing; (3) refusing to respond to Neal's reports of another individual brandishing a weapon; and (4) ignoring numerous reports regarding Neal's dangerous activities.  (ECF No. 47 at 17–18.)  None of these communications with Neal come close to the "prearranged

6

1 official sanction" of violence that occurred in *Dwares*. As to Plaintiffs' allegations about the
2 officers' inaction, even the *Dwares* court recognized "an allegation simply that police officers had
3 failed to act upon reports of past violence would not implicate the victim's rights under the Due
4 Process Clause." 985 F.2d at 99.

5       In *Pena*, an off-duty officer killed a number of people while driving intoxicated. 432 F.3d
6 at 102. The plaintiff alleged supervisory personnel encouraged the off-duty officer to drink in
7 excess and drive under the influence by routinely drinking with him in the precinct parking lot,
8 drinking and riding with him on the date of the incident, and otherwise communicating their
9 approval by condoning the misconduct. *Id.* at 110–11. The court found such allegations
10 amounted to a state created danger claim because state officials implicitly communicated to the
11 off-duty officer that he would not be "arrested, punished, or otherwise interfered with while
12 engaging in misconduct that [was] likely to endanger the life, liberty, or property of others." *Id.*
13 at 111–12. Importantly, "the Ninth Circuit has not adopted the *Pena* [c]ourt's holding that the
14 affirmative conduct element of the state-created danger doctrine may occur 'implicitly.'"
15 *Jamison v. Storm*, 426 F. Supp. 2d 1144, 1156 (W.D. Wash. 2006). Even if this Court found
16 *Pena* to be persuasive, the facts are much different here. In *Pena*, officers and supervisors
17 routinely drank at work with the off-duty officer and knew he was driving while drunk. 432 F.3d
18 at 110–11. Here, there are no allegations that County Defendants or any other officers
19 participated in or encouraged Neal's violence. There are no allegations to suggest that officers
20 implicitly communicated to Neal that he would "not be arrested, punished, or otherwise interfered
21 with" if he harmed others. *Id.* at 111. To the contrary, Plaintiffs allege Neal was arrested for
22 threatening individuals and firing a gun over their heads in January 2017, which resulted in the
23 issuance of the criminal protective order and a civil restraining order. (ECF No. 36 at 19.) At
24 most, Plaintiffs assert "a failure to prevent misbehavior and to reprimand or punish" Neal for
25 complaints about owning and shooting firearms on his property after January 2017, which is
26 insufficient to state a due process claim. 432 F.3d at 112.

27       In *Okin*, the court found there was "a genuine issue of material fact as to whether
28 [officers] implicitly but affirmatively encouraged [the assailant's] domestic violence." 577 F.3d

7

at 430.  The court cited an occasion when officers discussed football with the assailant during their response to the victim's complaint that he had beaten and tried to choke her.  *Id.*  The court also emphasized there were numerous occasions when the officers responded to the victim's complaints without filing a domestic incident report, interviewing the assailant, or making an arrest, even after the assailant told the officers he could not "help it sometime when he smack[ed] . . . [the victim] around."  *Id.*  The court stated the evidence showed "an escalating series of incidents" where the officers "openly expressed camaraderie with [the assailant] and contempt for [the victim]," which could be viewed as ratcheting up the threat of danger to the victim.  *Id.*  Unlike *Okin*, there are no allegations here that officers ever expressed camaraderie with Neal or contempt for potential victims.

The only Ninth Circuit case Plaintiffs cite on this issue is *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).  (ECF No. 47 at 13.)  In *Kennedy*, Kimberly Kennedy contacted a police department to report that a neighbor molested her young daughter.  *Id.* at 1057.  Kennedy warned the officer that the neighbor had "violent tendencies."  *Id.*  The officer "assured Kennedy she would be given notice prior to any police contact with the [neighbor's family] about her allegations."  *Id.* at 1058.  Despite this promise, the officer drove to the neighbor's residence and informed the neighbor's family of the allegations prior to warning Kennedy.  *Id.*  Later that evening, the suspect broke into Kennedy's house and shot Kennedy and her husband, killing the husband.  *Id.*  The Ninth Circuit found that, by notifying the neighbor's family of the allegations "before the Kennedys had the opportunity to protect themselves from this violent response to the news," the officer "affirmatively created an *actual, particularized* danger Kennedy would not otherwise have faced."  *Id.* at 1063 (emphasis added).

Unlike *Kennedy,* Plaintiffs' allegations do not lend even a reasonable inference that officers "affirmatively created an actual, particularized" danger to Plaintiffs.  Consistent with *Kennedy*, other Ninth Circuit courts have permitted claims to proceed under the state created danger theory only where the state actor played a significant role in creating the dangerous situation.  *See Munger*, 227 F.3d at 1082 (holding police officers could be held liable for the death of a visibly drunk patron from hypothermia they had ejected from a bar on an extremely

cold night); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (holding as viable a state created danger claim against police officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (holding state employees could be liable for the rape of a registered nurse assigned to work alone with a known, violent sex-offender); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (holding state could be liable for the rape of a woman that an officer had left stranded in a known high-crime area late at night). Here, the officers' alleged conduct falls far short of this standard. Although the officers may have been able to prevent the injuries, that does not mean they created an "actual, particularized" danger that did not otherwise exist. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989) ("The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."). As stated in this Court's previous order, Plaintiffs' allegations make clear that "Neal was, and would have remained, a dangerous individual prone to violent behavior" regardless of the officers' conduct.[1] (ECF No. 35 at 10–11.)

For all these reasons, Plaintiffs fail to allege affirmative action by County Defendants or any particular officer that created the danger posed by Neal. As such, Plaintiffs fail to assert a viable due process claim under the state created danger theory. In its prior order, the Court informed Plaintiffs what was necessary to state a plausible due process claim. Plaintiffs failed to do so and instead relied on many of the same allegations and arguments the Court previously rejected. Plaintiffs fail to persuade the Court that they can allege additional facts that would cure

---

[1] Plaintiffs also argue County Defendants "cut off other sources of assistance to Rancho Tehama, for example, instructing CalFire not to respond to pleas for assistance." (ECF No. 47 at 16.) Plaintiffs do not cite where in the FAC these allegations can be found. The Court can locate only one reference to a situation in July 2017 when CalFire received a call from Neal alleging he could smell a "burning perfume" he thought was methamphetamine. (ECF No. 36 at 26.) Plaintiffs allege County Defendants recommended CalFire not investigate this incident because Neal "had reality issues and was also a firearms owner." (*Id.*) Plaintiffs allege this shows County Defendants instructed CalFire not to respond, but they fail to explain how this allegation is relevant to or contributed to the danger that occurred on November 14, 2017. (*Id.*)

the deficiencies in this claim.  Therefore, the Court DISMISSES Plaintiffs' due process claim without leave to amend.[2]

> ii. *Claim Two: Equal Protection*

Plaintiffs bring their equal protection claim against County Defendants and Does 1–10. (ECF No. 36 at 52.)  As a preliminary matter, Plaintiffs argue the Court should deny County Defendants' challenge to the equal protection claim because County Defendants did not challenge this claim in their original motion to dismiss.  (ECF No. 47 at 23.)  "If a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).  However, the Ninth Circuit has adopted a "very forgiving" approach and allows district courts to consider new arguments in successive motions to dismiss in the interest of judicial economy.  *Id.* at 318–19.  Because the issue has now been fully briefed, the Court will consider the merits of County Defendants' arguments.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  In order to state an equal protection claim, a plaintiff must allege: (1) the municipal defendants treated him differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the municipal defendants acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification.  *Moua v. City of Chico*, 324 F.

---

[2] The Court also notes that to the extent Plaintiffs' claim is based on the actions of individual "Doe" officers, those officers would likely be granted qualified immunity based on the lack of clearly established law on this issue.  *See, e.g.*, *Decoria v. Cnty. of Jefferson*, 333 F. App'x 171, 173 (9th Cir. 2009) ("[W]e have never decided the question of whether a defendant officer violates a plaintiff's constitutional rights when, as in this case, the officer's challenged actions were not directed toward the plaintiff, but rather toward another person who later harmed the plaintiff.").

10

Supp. 2d 1132, 1137 (E.D. Cal. 2004).  The denial of police protection to disfavored persons stemming from discriminatory intent or motive violates the Equal Protection Clause.  *Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000).  However, "in police failure-to-serve cases, the courts consistently have required more evidence of discriminatory intent than a simple failure of diligence, perception, or persistence in a single case. . . ."  *Moua*, 324 F. Supp. 2d at 1140.

County Defendants argue Plaintiffs fail to allege discriminatory intent or motive.  (ECF No. 46-1 at 17.)  In opposition, Plaintiffs argue the following allegations in the FAC show discriminatory intent: (1) Defendants were biased and prejudiced against Rancho Tehama based on the perception that the community was impoverished, isolated, and a haven for "lowlifes, drug use, and general lawlessness"; (2) based on these biases and prejudices, Defendants withheld from the community ordinary and reasonable police response, protection, and enforcement services compared to other communities within their jurisdiction, "particularly involving [Neal]"; (3) Defendants' discriminatory purpose was to allow the community to experience and suffer the dangerous and lawless effects of the community's own fault and making; and (4) Defendants' conduct had the discriminatory effect of exposing Plaintiffs to the danger posed by Neal.  (ECF No. 47 at 25–26.)

Plaintiffs' somewhat attenuated claim seems to allege that officers violated their equal protection rights by failing to respond to complaints about Neal because the parties resided in the "impoverished," "lowlife," and "lawless" community of Rancho Tehama.  (*See* ECF No. 36 at 53–54.)  Plaintiffs fail to cite any case law where an individual raised a similar equal protection claim.  Indeed, "the typical fact pattern in . . . cases [regarding alleged unequal protection of police services] involves domestic violence and repeated calls for police intervention by a female victim," which is not analogous to the instant case.  *Moua*, 324 F. Supp. 2d at 1139–40.  Moreover, Plaintiffs fail to cite any factual allegations suggesting that officers withheld police services in response to complaints about Neal because of any bias or perception about Rancho Tehama, or that officers would have acted differently under the circumstances if Neal resided in another community.  The FAC includes numerous allegations suggesting police responded to complaints about Neal in a particular way because of Neal's specific characteristics.  For

11

example, Plaintiffs allege officers indicated Neal was "not law enforcement friendly," "would not come to the door," "had reality issues," and "was also a firearms owner." (ECF No. 36 at 56–57.) While the FAC also alleges the officers dismissed complaints about Neal because the callers were deemed "not credible," there are no factual allegations to suggest officers based these credibility determinations on broad perceptions about Rancho Tehama. (*Id.* at 57.) Put simply, there are no factual allegations to lend even a reasonable inference that officers treated Rancho Tehama residents, including Plaintiffs, worse than residents of other communities, much less that officers did so based on any bias or perception about Rancho Tehama. It seems that Plaintiffs' claim relates to "a simple failure of diligence, perception, or persistence" in cases involving Neal specifically, not Rancho Tehama generally. *See Moua*, 324 F. Supp. 2d at 1140. Plaintiffs fail to explain how this is sufficient to state an equal protection claim. Accordingly, the first element for such a claim — different treatment from others similarly situated — is not met.

For these reasons, the Court DISMISSES Plaintiffs' equal protection claim. Although the Court is hard-pressed to imagine how Plaintiffs could cure the aforementioned deficiencies in this claim, the Court will allow Plaintiffs an opportunity to amend based on the liberal standard in favor of granting leave to amend. *See Lopez*, 203 F.3d at 1130.

### iii.   Claim Three: Monell Claim

Plaintiffs assert a separate cause of action against County Defendants for failure to train/supervise and ratification of procedures in violation of § 1983 based on the constitutional violations alleged in the due process and equal protection claims. (ECF No. 36 at 61.) County Defendants assert this cause of action should be dismissed because Plaintiffs fail to allege the underlying constitutional violations or that any violation occurred as a result of a policy or custom adopted or ratified by a municipal policymaker. (ECF No. 46-1 at 19.)

Municipalities cannot be held vicariously liable for the unconstitutional acts of their employees based solely on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Rather, municipalities are only "responsible for their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). "In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury. The Court has further required that the plaintiff demonstrate

12

that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (quoting *Monell*, 436 U.S. 658; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Similarly, "[u]nder [§] 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen*, 885 F.2d at 645–46. However, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*

In its prior order, the Court dismissed Plaintiffs' *Monell* claim because they failed to plead an underlying constitutional violation. (ECF No. 35 at 18.) Without an underlying constitutional violation, Plaintiffs have no claim against anyone, including County Defendants. Because Plaintiffs again fail to allege an underlying due process or equal protection violation — which form the basis of Plaintiffs' *Monell* claim — the Court dismisses this claim. To the extent Plaintiffs are capable of alleging a viable equal protection claim, the Court grants leave to amend. *Lopez*, 203 F.3d at 1130.

### B. State Claims

County Defendants and RTA also move to dismiss Plaintiffs' five remaining state law claims. (*See* ECF Nos. 38, 46.) When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009). Because this Court's jurisdiction depends on Plaintiffs stating a viable equal protection claim — and the Court has indicated its doubt as to whether Plaintiffs can do so — the Court declines to rule on Defendants' challenges to Plaintiffs' remaining state law claims at this time. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) (stating that courts have inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

///

///

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS County Defendants' Motion to Dismiss (ECF No. 46) as follows:

1. Plaintiffs' due process claim (Claim One) is DISMISSED without leave to amend;
2. Plaintiffs' equal protection claim (Claim Two) is DISMISSED with leave to amend;
3. Plaintiffs' *Monell* claim (Claim Three) is DISMISSED with leave to amend to the extent Plaintiffs can plausibly allege an underlying equal protection claim; and
4. In the interest of judicial economy, the Court declines to consider Defendants' arguments regarding Plaintiffs' remaining state law claims, which depend on supplemental jurisdiction to be heard in this Court.

Further, the Court DENIES RTA's Motion to Dismiss (ECF No. 38) as moot.

Plaintiffs may file an amended complaint consistent with this Court's ruling not later than thirty (30) days from the electronic filing date of this Order. Defendants shall file a responsive pleading not later than twenty-one (21) days thereafter. If Plaintiffs choose not to amend their federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state claims and dismiss the action.

IT IS SO ORDERED.

DATED:  September 2, 2021

Troy L. Nunley
United States District Judge